UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAQUEL T.C., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security Administration, <br><br> Defendant. | Case No.  2:20-cv-02775-SP <br><br> MEMORANDUM OPINION AND ORDER |

## I.

## **INTRODUCTION**

On March 25, 2020, plaintiff Raquel T.C. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking review of a denial of supplemental security income ("SSI").  The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents two issues for decision: (1) whether the Administrative Law Judge ("ALJ") properly considered plaintiff's testimony; and (2) whether the

1

appointment of former Commissioner of Social Security, Andrew Saul, was constitutional. *See* Mem. in Supp. of Pl.'s Compl. ("P. Mem.") at 5-17; Pl.'s Notice of New Authority ("Notice") at 1-2; *see also* Mem. in Supp. of Def.'s Answer ("D. Mem.") at 2-9.

Having carefully studied the parties' memoranda, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly evaluated plaintiff's subjective symptom testimony. The court also finds that even if former Commissioner Saul's appointment was unconstitutional, plaintiff fails to establish that her case should be reviewed by the Social Security Administration ("SSA") de novo. The court therefore affirms the decision of the Commissioner denying SSI.

## II.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, who was 38 years old on the alleged disability onset date and 46 years old on the application date, completed junior high in Mexico and tenth grade in the U.S. *See* AR at 39, 73. Plaintiff has past relevant work as a clerk typist. *See* AR at 60-61.

On May 5, 2016, plaintiff filed an application for SSI, alleging an onset date of December 31, 2007. *See* AR at 73. Plaintiff claimed she suffered from lower back pain, heart problems, and high blood pressure. *See id.* Plaintiff's application was initially denied on September 30, 2016. *See* AR at 79-83.

Plaintiff requested a hearing, which the assigned ALJ held on December 19, 2018. AR at 34. Plaintiff, represented by counsel and assisted by a Spanish interpreter, appeared and testified at the hearing. AR at 39-61. The ALJ also heard testimony from Alan L. Ey, a vocational expert. *See* AR at 54-69. The ALJ denied plaintiff's claim for benefits on March 6, 2019. AR at 28.

Applying the well-established five-step sequential evaluation process, the

ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since May 5, 2016, the application date. AR at 21.

At step two, the ALJ found plaintiff suffered from the following severe impairments: lumbar spinal stenosis and radiculopathy, status post laminectomies and fusion with repair and revision with hardware removal; failed back syndrome; cervical radiculopathy with left upper extremity weakness; degenerative joint disease of the bilateral knees; and obesity. *Id.*

At step three, the ALJ found that plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR at 22.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined she had the ability to perform:

> light work as defined in 20 CFR 416.967(b) except: she can stand and/or walk 4 hours total during an 8-hour day; can occasionally bend, crouch, stoop, and crawl; can occasionally walk on uneven terrain, climb, and work at heights; can frequently push and/or pull with the left upper extremity; and can use the left upper extremity for frequent handling, fingering, feeling, and reaching.

AR at 22-23.

The ALJ found, at step four, that plaintiff was able to perform her past relevant work as a clerk typist, both as actually and generally performed. AR at 27. The ALJ accordingly concluded plaintiff was not under a disability, as defined

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 nn.5-7 (9th Cir. 1989) (citations omitted). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

in the Social Security Act, at any time since May 5, 2016, the date the application was filed. AR at 28.

Plaintiff filed a timely request for review of the ALJ's decision, but the Appeals Council denied the request for review on January 29, 2020. AR at 1. Accordingly, the ALJ's decision became the final decision of the Commissioner.

### III.
### STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the SSA must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035 (citation omitted). Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998) (citations omitted); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Aukland*, 257 F.3d at 1035 (cleaned up). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "may not substitute its judgment for that of the ALJ." *Id.*

(cleaned up).

## IV.

## DISCUSSION

### A. The ALJ Properly Evaluated Plaintiff's Testimony

Plaintiff argues the ALJ failed to articulate legally sufficient reasons for discounting her testimony regarding the limiting effects of her physical impairments.

#### 1. Legal Standard

The court looks to Social Security Ruling ("SSR") 16-3p for guidance on evaluating plaintiff's alleged symptoms. SSR 16-3p rescinded and superseded SSR 96-7p and applies to decisions made on or after March 28, 2016. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). "Although SSRs do not have the same force and effect as statutes or regulations, they are binding on all components of the Social Security Administration." *Id.* (citing 20 C.F.R. § 402.35(b)(1)).

In adopting SSR 16-3p, the SSA sought to "clarify that subjective symptom evaluation is not an examination of an individual's character." *Id.* at *2.

> [SSR 16-3p] makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms, and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.

*Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (cleaned up).

To evaluate a claimant's symptom testimony, the ALJ engages in a two-step analysis. *Christine G. v. Saul*, 402 F. Supp. 3d 913, 921 (C.D. Cal. 2019) (quoting *Trevizo*, 871 F.3d at 678). First, the ALJ must determine whether the claimant

produced objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id.* Second, if the claimant satisfies the first step, and there is no evidence of malingering, the ALJ must evaluate the intensity and persistence of the claimant's symptoms and determine the extent to which they limit her ability to perform work-related activities. *Id.*

In assessing intensity and persistence, the ALJ may consider: a claimant's daily activities; the location, duration, frequency, and intensity of the symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication taken to alleviate the symptoms; other treatment received; other measures used to relieve the symptoms; and other factors concerning the claimant's functional limitations and restrictions due to the symptoms. *Id.* (citing 20 C.F.R. § 416.929; SSR 16-3p, 2017 WL 5180304, at *4; *Smolen*, 80 F.3d at 1283-84 & n.8 (9th Cir. 1996)). To reject the claimant's subjective symptom statements at step two, the ALJ must provide "specific, clear, and convincing" reasons, supported by substantial evidence in the record, for doing so. *Id.* at 921, 929.

### 2. Plaintiff's Subjective Symptom Testimony

The ALJ summarized plaintiff's testimony as follows. In an August 2016 function report, plaintiff reported back pain, which limited her ability to walk, stand, or lift. AR at 23, 242-43. She also claimed that she tries to engage in regular household chores, but has to take breaks while doing them. AR at 23, 244.

At the hearing in December 2018, plaintiff testified that she was being treated for her back issues with pain medication, but that the pills only help for about two hours. AR at 23, 41. She reported four back surgeries, the most recent taking place in April 2018. AR at 23, 41-42. On an average day, she claimed her pain level does not go below an eight, except that it goes to a five when she takes

medication. AR at 23, 50. Walking worsens her pain, which also got worse after therapy. AR at 23, 42, 50. She does some household chores, like cooking, but has to lie down for about half an hour after cooking for 30 minutes. AR at 23, 50-51. Generally, she has to lie down three times a day. AR at 23, 51. The ALJ questioned her about medical records stating that she was happy with the results of her recent surgery. AR at 23, 45. She responded that she felt better for about two months, after which her pain returned in a manner worse than before. AR at 23, 45-46.

In her memorandum, plaintiff highlights additional parts of her hearing testimony and functional report. She testified that she takes pain medication, including Norco, and her doctors recommended a pain pump, which would deliver medicine to her body on a constant basis. *See* AR at 41, 47. Even with medication, her pain never goes completely away. AR at 49-50. She claims that her four surgeries did not help at all. AR at 41-42.

Plaintiff testified that she drives her children to school, about six miles away, but needs help from her sister or husband when she is in too much pain. *See* AR at 42-44, 242. She stated her sister helps her take the kids to school about twice a week. *See* AR at 49. She claimed that she does not drive for more than 20 minutes. AR at 243. She is allegedly able to walk for only about five or six minutes before her pain requires her to go back home and lie down for half an hour. AR at 50-51. Finally, she claims she cannot lift any kind of objects on her own. AR at 243.

### 3. Analysis

At the first step for evaluating a claimant's symptom testimony, the ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at 23. At the second step, the ALJ partly discounted plaintiff's testimony concerning the intensity, persistence, and

limiting effects of her symptoms as not entirely consistent with the medical evidence and other evidence in the record. *Id.* Because plaintiff cleared step one and the ALJ found no evidence of malingering, the ALJ's reasons for discounting plaintiff's testimony had to be specific, clear, convincing, and supported by substantial evidence.

The ALJ's discussion of plaintiff's symptom testimony begins with a summary of her statements at the hearing and in her August 2016 function report. *See* AR at 23. The ALJ then explains that her symptom testimony is not "entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.* The ALJ goes on to summarize the evidence that he interpreted as restricting plaintiff to a reduced range of light exertion, including significant reductions in standing and walking. *See* AR at 24-27.

### a. Inconsistencies With Objective Medical Record

The ALJ began by analyzing plaintiff's objective medical history, which revealed a significant history of lumbar spinal stenosis and radiculopathy necessitating multiple surgeries. AR at 24. She first had fusion surgery in January 2015, which did not resolve her radiating leg pain. *See* AR at 24, 362, 390, 494. A nerve conduction study and EMG of her lower extremities from May 2017 returned abnormal findings of chronic denervation at multiple levels, including L4, L5, and S1. *See* AR at 24, 331. Plaintiff tried a variety of treatments, including physical therapy, oral pain medications, facet injections, and lumbar epidural steroid injections without notable relief. AR at 24, 353.

In September 2017, plaintiff had an L4-S1 laminectomy. AR at 24, 359. Treatment notes from February 6, 2018 state the procedure led to complete relief from her radiating leg pain and neurologic changes. *See id.* Although she complained of posterior back pain, she was ambulating without complaints. *Id.*

On February 16, 2018, Dr. Seung Ha Lim performed a consultative internal medicine examination. AR at 24, 327-30. Dr. Lim reported that plaintiff had a well-healed scar in her lower back, had pain on motion (specifically, slow gait due to back pain), paravertebral tenderness, and decreased range of motion of the back without any signs of radiculopathy. *See* AR at 24, 328-30. Regarding her extremities, there was no clubbing, cyanosis, edema, effusions, warmth, crepitus, or pain on motion. *See* AR at 24, 329. There was no laxity of joints, and their ranges of motion were within normal limits. *See id.* Her deep tendon reflexes were 2/2 and symmetrical throughout, and plantar responses were flexor. *See* AR at 24, 329-30. Using a Jamar Hand Dynamometer, plaintiff was able to generate 65 pounds of force using her right hand and 30 pounds of force using the left. AR at 24, 328. She did not require an assistive device for ambulation. AR at 24, 330.

On February 26, 2018, plaintiff had revision L2-3 fusion and durotomy repair. *See* AR at 24, 411. In a follow up appointment on March 22, 2018, the doctor noted that she had been ambulating without difficulty. *See* AR at 24, 408.

In April 2018, however, plaintiff suffered a dural tear of the lumbar spine, which required surgery involving bilateral paraspinous muscle flap reconstruction, coverage of the dural tear, and an open wound of the lumbar spine. *See* AR at 24, 446. Once discharged, she was able to ambulate independently. AR at 24, 440.

In July 2018, plaintiff underwent a consultative orthopedic examination with Dr. Jerry Chuang. *See* AR at 376-80. She exhibited a limp and abnormal gait with antalgia, and was unable to toe or heel walk. AR at 25, 377. She could squat and rise but only slowly, although she did not use any assistive device to ambulate. *Id.* Dr. Chuang's examination of her cervical spine revealed tenderness to palpation and muscle spasm. *Id.* Range of motion was painful and limited with flexion of 45 degrees and extension of 10 degrees. AR at 25, 377-78. Her lumbar spine revealed tenderness to palpation and muscle spasm too. AR at 25, 378. Range of

9

motion was also painful, limited with flexion of 40 degrees and extension of 10 degrees. *Id.* Her straight-leg raising test was positive in the supine position bilaterally and in the seated position bilaterally to 60 degrees. *Id.* Lasegue's Test and Faber's Test were both negative. *Id.*

In addition, findings from her extremities were unremarkable except for the knees, which showed tenderness on palpation and painful range of motion limited to 120 degrees flexion in both knees. AR at 25, 378-79. Neurologically, motor strength was 4/5 in the lower extremities, 4+/5 in the left upper extremity, and 5/5 in the right upper extremity. AR at 25, 379. She had decreased sensation to light touch in the left L3 to S2 dermatomes. *Id.*

Based on these findings, Dr. Chuang diagnosed plaintiff with lumbosacral radiculopathy with failed back syndrome status post lumbar spine surgery with residual moderate weakness in bilateral lower extremities, mild bilateral knees degenerative joint disease, and mild cervical radiculopathy causing headache and mild weakness in the left upper extremity. AR at 25, 379-80.

An August 2018 X-ray of plaintiff's lumbar spine confirmed her history of fusion and laminectomy, and noted mild diffuse degenerative disc disease. *See* AR at 24, 560. She was treated with facet injections for pain relief along with physical therapy. *See* 24, 562, 568-74. The therapy records indicate that her rehabilitation potential was "good." AR at 24, 573. Subsequent treatment records show that she had a stable, non-antalgic gait. AR at 24, 565. A September 2018 X-ray revealed stable laminectomy and pedicle screws. *See* AR at 24, 567.

Records from October 2018 indicate that plaintiff could ambulate without complaints, exhibited normal gait, 5/5 bilateral lower extremity strength, and her lumbar incision had healed. AR at 24, 578. In terms of pain, she reported treatment for pain management, including a visit to her pain management doctor in September 2018 due to mild intermittent burning in the anterior thigh areas. *See*

*id.*

Finally, the ALJ took into account plaintiff's history of obesity, which documented body mass index scores over 30. AR at 25, 404, 407, 410, 422, 425. The ALJ considered the combined effects of obesity and plaintiff's other severe impairments on her fatigue, pain, and overall functional capacity pursuant to SSR 02-1p.[2] *See* AR at 25.

Plaintiff makes three main arguments in support of her contention that the ALJ's reliance on the objective medical evidence was not a proper reason to discount her testimony. First, she argues that the ALJ failed to connect any specific portions of her testimony to the parts of the record supporting the ALJ's decision. *See* P. Mem. at 14. While the ALJ's analysis could have been more explicit, the court finds that, on balance, the ALJ's juxtaposition of plaintiff's testimony with the inconsistent medical evidence is sufficiently clear for the court to evaluate. *See Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (ALJs are not required to "perform a line-by-line exegesis of the claimant's testimony, nor do [the regulations] require ALJs to draft dissertations when denying benefits" (citation omitted)). In fact, the ALJ expressly identified a particularly important inconsistency between the objective medical record and plaintiff's claim that her pain worsened about two months after her April 2018 surgery. *See* AR at 23, 45-46. The ALJ acknowledged that, in July 2018, Dr. Chuang's orthopedic examination revealed multiple issues that appear to support plaintiff's claim of increased pain, including a limp, abnormal gait with antalgia, and limited range of motion due to pain. *See* AR at 24; *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (ALJ must not cherrypick evidence). But by late 2018, plaintiff was ambulating without complaints and treating mild intermittent burning pain in her

---

[2] SSR 02-1p was rescinded and replaced by SSR 19-2p on May 20, 2019, after the ALJ's decision.

11

anterior thigh areas with injections and physical therapy. *See* AR at 24; *Celaya v. Halter*, 332 F.3d 1177, 1181 (9th Cir. 2003) (ALJ's finding that symptoms were controlled was clear and convincing reason to reject plaintiff's testimony). Plaintiff is correct that treatment with injections is not conservative, but the court will not second-guess the ALJ's determination that, taking all of the objective medical evidence into account, plaintiff's overall condition contradicted her claims of incapacity. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." (citation omitted)).

      Second, plaintiff argues the ALJ cherrypicked evidence to support his conclusion that plaintiff did not exhaust treatment options. *See* P. Mem. at 14-15 (citing AR at 23). But as defendant points out, that page of the decision does not actually say what plaintiff claims. Plaintiff may have intended to cite page 24 of the AR in which the ALJ states that plaintiff pursued conservative treatment, including oral pain medications, facet injections, and lumbar epidural steroid injections. To the extent the ALJ intended to rely on these treatment forms as a reason to reject plaintiff's testimony, the court agrees they are not actually conservative. *See Christie v. Astrue*, 2011 WL 4368189, at *4 (C.D. Cal. Sept. 16, 2011) (steroid injections and certain types of oral pain medication, like narcotics, are not considered conservative treatments). Nonetheless, this error was harmless because the ALJ found other inconsistencies between plaintiff's testimony and the objective medical record.

      Third, plaintiff argues that even if inconsistency with the medical evidence was a proper reason to reject her testimony, it could not have been the only reason. *See* P. Mem. at 14; *Burch*, 400 F.3d at 680 ("[A]n ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." (citation omitted)). Defendant responds

that "there is an analytical difference between a lack of corroborating medical evidence and a contradiction between subjective claims and existing medical evidence." Def.'s Mem. in Supp. of Answer ("D. Mem.") at 4 (quoting *Sills v. Astrue*, 2013 WL 782076, at *3 (C.D. Cal. Mar. 1, 2013)). The court agrees with defendant that the inconsistencies identified by the ALJ – specially those concerning plaintiff's condition in mid and late 2018 – rise to the level of contradictions, rather than a mere lack of corroborating medical evidence. "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citation omitted). Thus, this reason alone would be sufficiently specific, clear, and convincing to discount plaintiff's symptom testimony. Nonetheless, the ALJ provided additional reasons.

### b.   **Prior Inconsistent Statements**

The ALJ also noted inconsistencies between plaintiff's testimony and prior statements made to her providers. Specifically, after her surgeries in September 2017, February 2018, and April 2018, she reported being "very happy" with the procedures. *See* AR at 24, 359, 411. And on October 10, 2018, plaintiff told a provider that she was "[o]verall . . . happy with her outcome to date." *See* AR at 24, 578.

The court agrees with plaintiff that her February and March 2018 statements are not necessarily inconsistent with her recent testimony. She testified that her pain worsened about two months after her April 2018 surgery, *after* she made those first two statements. Thus, those statements are more representative of a temporary period of reprieve, rather than lasting relief. *See Davis v. Saul*, 2021 WL 2333256, at *6 (S.D. Cal. June 7, 2021) (ALJ "erred in relying on cherry-picked instances of temporary relief to reject Plaintiff's subjective symptom testimony" (citations omitted)).

1  On the other hand, plaintiff's October 2018 statement is indeed inconsistent with plaintiff's later testimony. Prior inconsistent statements by a claimant may be a valid clear and convincing reason to discount her testimony. *See Ghanim*, 763 F.3d at 1163 (prior inconsistent statements regarding symptoms may be considered); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (accepting reason that plaintiff made inconsistent statements regarding the severity of his diabetic symptoms).

Plaintiff argues the ALJ selectively cited the record, which also shows that on October 8, 2018 her "pain management physician" reported that plaintiff was having continued pain with activity. *See* P. Mem. at 16 (citing AR at 568). As defendant points out, however, the report that plaintiff cites is from her physical therapy provider, not a physician. In any event, plaintiff does not explain why her description of her symptoms to the physical therapy provider was markedly different from what she told her physician just two days later.

Plaintiff also contends the ALJ is focusing too much on plaintiff's statements about being happy with her progress. *See* P. Mem. at 16-17. She argues that the ALJ failed to consider the record as a whole, which is more reflective of her overall condition than isolated evidence of temporary improvement. *See id.* But the ALJ did consider all relevant evidence, some of which tended to support plaintiff's testimony. As previously noted, the ALJ described several treatment records that recounted plaintiff's significant history of lumbar spinal stenosis and radiculopathy, as well as her many surgeries. But the record also shows many normal or mild findings after plaintiff's last surgery on April 2018. Those unremarkable findings bolster plaintiff's October 2018 report that she was happy with her progress.

Accordingly, this was also a specific, clear, and convincing reason, backed by substantial evidence, to discount plaintiff's symptom testimony.

        **c.**     **Inconsistencies with Medical Opinions**

Next, the ALJ highlighted differences between plaintiff's symptom testimony and the opinions of two consultative examiners. As already discussed, the consultative examinations were performed by Dr. Lim in February 2018 and Dr. Chuang in July 2018. The ALJ noted that both physicians opined that plaintiff was capable of performing work in the light exertion range. *See* AR at 25, 327-30, 376-80. Dr. Chuang assessed more restrictive limitations than Dr. Lim, which the ALJ concluded were more consistent with the record given that Dr. Lim's opinion predated plaintiff's two most recent surgeries. *See* AR at 26. Accordingly, the ALJ adopted Dr. Chuang's more restrictive limitations, which reduced plaintiff's ability to stand and/or walk to four hours out of an eight-hour workday and provided for various non-exertional limitations. *See* AR at 26, 376-80.

As previously discussed, plaintiff testified that, among other things, she cannot walk for more than six minutes before her pain requires her to lie down for half an hour. AR at 50-51. She alleges that her ability to stand and lift objects is also severely limited. *See* AR at 50-51, 243-44. But her testimony is inconsistent with Dr. Chuang's opinion that she can walk or stand four hours out of an eight-hour workday and lift 10 pounds frequently or 20 pounds occasionally. *See* AR at 380. Plaintiff does not argue the ALJ erred in concluding that Dr. Chuang's opinion was reasonable and supported by the objective medical evidence. *See* AR at 25-26. Thus, this was also a specific, clear, and convincing reason to discount her testimony. *See Kallenbach v. Berryhill*, 766 F. App'x 518, 521 (9th Cir. 2019) (inconsistencies between the medical opinion evidence and plaintiff's subjective testimony may be a specific, clear, and convincing reason to discount the testimony).

        **d.**     **Inconsistencies with Activities of Daily Living**

Finally, the ALJ determined that plaintiff's activities of daily living

("ADLs") appeared to be compatible with an ability to sustain the work activities allowed by the RFC. *See* AR at 27. The ALJ noted that in August 2016, after her first back surgery, plaintiff reported she could perform various household chores, such as cooking, washing dishes, and doing laundry, albeit with breaks. *See id.* (citing AR at 243-44). Plaintiff also claimed she was able to carry groceries from her car to the entrance of her house, and was able to take her children to and from school. *Id.* (citing AR at 242-43). Further, at the December 2018 hearing, plaintiff testified that she maintained the ability to drive, and that she actually drives to her sister's home and takes her children to and from school most of the time. *See id.* (citing AR at 42-44). Plaintiff also cooks for about half an hour, after which she reportedly has to lie down or take a break. *Id.* (citing AR at 43).

"[I]f a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities." *Burch*, 400 F.3d at 681 (citations omitted). Here, the court is not convinced that the ADLs plaintiff testified about are inconsistent with her symptom testimony. Although plaintiff testified that she can perform several ADLs, the ALJ did not adequately consider plaintiff's testimony that she can only do those activities for a small period of time. *See Reddick*, 157 F.3d at 722 ("Only if the *level* of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility." (emphasis added)). For example, she reported that she has to take breaks when doing chores, cannot drive for more than 20 minutes, and can only walk for about five or six minutes. *See* AR at 50-51, 243-44. Notably, the vocational expert testified that plaintiff would not be able to perform any jobs if she indeed needed as many breaks as she testified. *See* AR at 64-65; *Reddick*, 157 F.3d at 722 (finding plaintiff's symptom testimony was consistent with ADLs because they were "sporadic and punctuated with rest");

16

*Trevizo*, 871 F.3d at 682 ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." (cleaned up)).

In support of its argument that the ADLs contradict plaintiff's symptom testimony, defendant cites a case in which the Ninth Circuit treated a claimant's ability to fix meals, do laundry, work in the yard, and occasionally care for a child as evidence of his ability to work. *See* D. Mem. at 6-7 (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)). But the functional limitation at issue in that case was a lack of motivation and concentration. *See Morgan*, 169 F.3d at 600. The plaintiff's ADLs clearly contradicted his claims of severe limitations in those specific functional areas. Additionally, the Ninth Circuit found that the plaintiff was able to spend "a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *See id.* Here, again, plaintiff testified that although she can perform certain ADLs, she only does so for relatively small periods of time before needing rest.

For these reasons, the court finds that plaintiff's symptom testimony was not inconsistent with her statements about ADLs. Thus, this was not a convincing reason to discount her symptom testimony. But this error was harmless because the ALJ identified three other specific, clear, and convincing reasons, supported by substantial evidence, to discount plaintiff's symptom testimony.

**B.     The Court Rejects Plaintiff's Vague Constitutional Challenge**

On September 8, 2021, several months after defendant filed her Memorandum, plaintiff filed a Notice of New Authority. In the Notice, she states that the U.S. Department of Justice's Office of Legal Counsel issued an opinion on July 8, 2021 that casts significant doubt on the constitutionality of the appointment of the prior Commissioner of Social Security. Notice at 1. Plaintiff notes she filed

17

her claim for benefits on May 5, 2016, participated in a hearing on December 19, 2018, received the ALJ's adverse decision on March 1, 2019,[3] and was denied review by the Appeals Council on January 29, 2020. *Id.* at 2. She indicates that Andrew Saul held the office of Commissioner of Social Security as the sole person dischargeable for cause only between June 17, 2019 and July 11, 2021. *Id.* at 1-2.

The court is puzzled by plaintiff's filing, which does not explain whether she is seeking any particular type of relief as a result of the alleged constitutional problem with the former Commissioner's appointment. Plaintiff had never raised the issue prior to the filing of her Notice. To try to ascertain the nature of plaintiff's argument, the court reviewed other social security cases in which plaintiff's counsel also participated and raised the issue. From that, it appears plaintiff intended to argue that the Commissioner's final decision in this case arose from an unconstitutional administrative process. *See, e.g.*, *Dareth T. v. Kijakazi*, 2022 WL 671540, at *2 (C.D. Cal. Mar. 7, 2022). Specifically, the allegedly unconstitutional removal provision rendered Saul's tenure as Commissioner unconstitutional, which in turn tainted his delegation of authority to the assigned ALJ and the Appeals Council to consider and decide plaintiff's case. *See id.*

The court will not address each of the arguments plaintiff's counsel presented in other cases but not here. The court finds only that it is not convinced plaintiff's constitutional challenge warrants reversal here, for two reasons. First, the Ninth Circuit recently opined that "the possible invalidity of a restriction on the removal of an official does not render invalid the appointment of the official." *See Toni D. M. v. Kijakazi*, 2022 WL 423494, at *2 (C.D. Cal. Jan. 5, 2022) (citing *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1137 (9th Cir. 2021)). Second, plaintiff has not even attempted to show any connection between the allegedly unconstitutional removal clause and the ALJ's or Appeals Council's decision

---

[3] The date of the ALJ's decision is actually March 6, 2019. *See* AR at 28.

denying her benefits. *See id.* at *3 (citing other cases on point); *Dareth T.*, 2022 WL 671540, at *3 (same). Accordingly, the court rejects plaintiff's incomplete constitutional challenge.

V.

**CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing this action with prejudice.

DATED: March 28, 2022

SHERI PYM
United States Magistrate Judge